**Electronically Filed
Supreme Court
SCWC-28501
27-APR-2012
09:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

RICHARD MARVIN III, and AMY MARVIN, Individually and as Next Friends of IVY MAE MARVIN, SADIE MARVIN, SAVANNAH MARVIN and ANABELLE MARVIN, minors; WYLIE HURD; NICHOLAS FRED MARVIN, individually and as Next Friend of ALANA MARVIN, minor; AARON MARVIN; BARBARA NELSON; JEFFREY McBRIDE; MARETA ZIMMERMAN, Individually and as Next Friend of TEVA DEXTER and LIKO McBRIDE, minors,
Petitioners/Plaintiffs-Appellees,

vs.

JAMES PFLUEGER, PFLUEGER PROPERTIES; and PILAʻA 400, LLC,
Respondents/Defendants-Appellants.

----------------------------------------------------------------

JAMES PFLUEGER, PFLUEGER PROPERTIES; and PILAʻA 400, LLC,
Respondents/Counterclaimants-Appellants,

vs.

RICHARD MARVIN III; AMY MARVIN; NICHOLAS FRED MARVIN and JEFFREY McBRIDE, Petitioners/Counterclaim-Defendants-Appellees.

NO. SCWC-28501

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 28501; CIV. NO. 02-1-0068)

APRIL 27, 2012

NAKAYAMA, ACTING C.J., AND DUFFY, J.,
CIRCUIT JUDGE WILSON IN PLACE OF RECKTENWALD, C.J., RECUSED,
CIRCUIT JUDGE BORDER ASSIGNED BY REASON OF VACANCY,
AND ACOBA, J., CONCURRING AND DISSENTING SEPARATELY

OPINION OF THE COURT BY NAKAYAMA, ACTING C.J.

Landowners brought this lawsuit against their neighbor, seeking compensation for property damage caused by the neighbor, and seeking a determination of access and water rights. The application before this court, however, raises questions concerning procedural aspects of the hearings before the trial court and of the appeal to the Intermediate Court of Appeals. The first question presented concerns pleading standards of appellate briefs, and the remaining questions address the trial court's determination of which parties must participate in a lawsuit, and the procedure an appellate court should follow when reviewing that determination. We accepted the plaintiffs' application, and after careful consideration of the issues presented, we now hold that the ICA did not err in reviewing the defendants' points of error on appeal. We also hold that the ICA erred in vacating the trial court's final judgment. Therefore, as explained below, we reverse the decision of Intermediate Court of Appeals and reinstate the trial court's order in this case.

## I. BACKGROUND

Plaintiffs[1] Richard Marvin, III; Amy Marvin; Nicholas Fred Marvin; and Barbara Nelson ("plaintiffs") are landowners and

---

[1] The original complaint was also filed by plaintiffs Wylie Hurd, Jeffrey McBride, and Mareta Zimmerman. Some plaintiffs sued both in their individual capacities and on behalf of their minor children, who are also kuleana residents. Claims filed by Mr. Hurd, Mr. McBride, and Ms. Zimmerman are not at issue in the appeal before this court.

residents of Pilaʻa Bay, Kauaʻi.  They live on Haena Kuleana, a kuleana[2] adjacent to property owned by one of the named defendants, Pilaʻa 400, LLC[3].  In 1965, prior to plaintiffs' purchase of the property, the kuleana was partitioned; plaintiffs own two-thirds of Haena Kuleana and Heidi Huddy-Yamamoto ("Huddy-Yamamoto"), not a party to the action, owns the remaining one-third of Haena Kuleana.

## A.    The Trial Court's Proceedings

Plaintiffs filed an action for damages and injunctive relief on April 12, 2002 after James Pflueger graded the bluff on his property above the Haena Kuleana, causing a mudslide in November 2001 that covered plaintiffs' kuleana, and neighboring kuleana, with mud.  Huddy-Yamamoto was asked to join the lawsuit, but she specifically refused to participate.  Over the course of four years, plaintiffs amended the complaint twice, and defendants filed a counterclaim and two amended counterclaims. The Circuit Court of the Fifth Circuit[4] ("trial court") dismissed

---

[2]    "'Kuleana' means 'a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor.'" Bremer v. Weeks, 104 Hawaiʻi 43, 46 n.5, 85 P.3d 150, 153 n.5 (2004) (citation omitted).

[3]    The original complaint named two defendants: Pflueger Properties and James Pflueger, individually and as a representative of Pflueger Properties.  Shortly after filing, plaintiffs added Pilaʻa Properties 400, LLC, as a defendant.  James Pflueger is one of Pilaʻa 400 LLC's members.  The trial court found that title to the neighboring property is held by Pilaʻa 400, LLC.

[4]    The Honorable Kathleen N.A. Watanabe presided.

3

most of the claims with prejudice due to the parties' stipulation, and dismissed other claims as a matter of law.

On June 6, 2006, plaintiffs filed a motion for partial summary judgment and/or preliminary injunction on their cause of action for an easement by necessity. On July 28, 2006, the trial court filed an order holding the motion in abeyance pending an evidentiary hearing scheduled for August 9, 2006.

On Friday, August 4, 2006, five days before the scheduled hearing, defendants filed a position statement raising, for the first time, Huddy-Yamamoto's absence.[5] Defendants argued that the court should dismiss the action in its entirety or stay the motion pending joinder of Huddy-Yamamoto. However, defendants did not file a 12(b)(7) motion to dismiss for failure to join a party under Rule 19.

Beginning on Wednesday, August 9, 2006, the trial court held four days of hearings on plaintiffs' motion for partial

---

[5] The ICA memorandum opinion states that defendants had raised the issue in their answer to plaintiffs' second amended complaint, filed in 2003. Marvin v. Pflueger, No. 28501, 2010 WL 2316274 at *17 (App. June 8, 2010) (mem.). Defendants' eighteenth defense (of forty-three asserted defenses) does state "Plaintiffs have failed to name indispensable parties to this action." However, Huddy-Yamamoto is not named in this defense, there is no indication in the record that defendants were raising the question of Huddy-Yamamoto's absence, and it is clear from the context of the other filings in the case that defendants are not referring to Huddy-Yamamoto. First, as the trial court found, defendants filed a motion to establish temporary access without including Huddy-Yamamoto in that motion. This motion was filed on March 18, 2003, just 15 days after defendants filed their second amended complaint on March 3, 2003. Second, when defendants subsequently filed a motion to dismiss plaintiffs' complaint for failure to join an indispensable party, the party they named was Bluewater Sailing Kaua'i, the Marvins' business to which plaintiffs allege damages as a result of the mudslide. Defendants did not allude to Huddy-Yamamoto as an indispensable party until August 2006, just five days before the trial began.

4

summary judgment.  At the beginning of the first day of hearings, plaintiffs' counsel objected to the position statement, arguing that it was not a position statement, but rather that it was a whole new brief because it raised new arguments.  As the trial court properly noted, "The purpose of a position statement is to summarize your respective positions, not to bring up new issues." Noting the plaintiffs' objection, the court instructed the parties to move forward with the hearings, and heard testimony of thirteen witnesses over four days.  Plaintiffs testified about the difficulty they have experienced in accessing their property, and they called kamaʻāina witnesses[6] to testify about historical access to the property.  Defendants called two expert witnesses: Attorney Robert Graham, Jr. testified about Hawaiian land and water law, and Civil Engineer Leland Y.S. Lee testified about defendants' proposed access route.  Defendants also called kamaʻāina witnesses and other witnesses familiar with the area. Huddy-Yamamoto participated in the hearings as a witness for defendants.  She testified that she wanted to participate in the case as a party.  However, she also testified that she had been asked to join the lawsuit from the beginning, and that she had declined.  Though she testified that she understood the hearings

---

[6]     "A kamaʻaina [kamaʻāina] witness is a person 'familiar from childhood with any locality.'"  State by Kobayashi v. Zimring, 58 Haw. 106, 145 n.8, 566 P.2d 725, 747 n.8 (1977) (quoting In Re Boundaries of Pulehunui, 4 Haw. 239, 245 (1879)).

to involve access and water rights for the kuleana she shares with the Marvins, and though she testified that she had an attorney, Huddy-Yamamoto never filed a motion to intervene in the proceedings.

After the conclusion of the proceedings, the trial court found that Huddy-Yamamoto was not an indispensable party to the action. It therefore issued an order granting plaintiffs' partial motion for summary judgment regarding the easement, granting plaintiffs' motion for a temporary restraining order preventing defendants from interfering with the property's water system, and requiring defendants to execute a recordable grant of easement in favor of plaintiffs. Accompanying the order were 159 Findings of Fact and 15 Conclusions of Law ("FOF/COL"). This opinion reviews the relevant FOF/COL in Section III.B.3, infra.

## B.   The ICA's June 8, 2010 Memorandum Opinion

On appeal to the ICA, defendants' first point of error stated:

> A.   The circuit court erred in granting the Marvin Parties' motion for summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order. In its January 4, 2007 Findings of Fact and Conclusions of Law; Order ("Order"), the court stated:
>
> > 12. The Court finds the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit.
>
> Order, R. V.25 at 42. [...]

In the section analyzing this point of error, defendants cited to

FOF/COL 102, which states "There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit.  Indeed, they were asked to participate, and refused."  Defendants argued that the point of the lawsuit was to determine access and water rights for the entire Haena Kuleana and that Huddy-Yamamoto's participation is required because her property is part of the kuleana.

In addition to plaintiffs' substantive arguments in support of the judgment below, they argued that defendants' brief did not comply with HRAP Rule 28 because, while defendants challenged conclusions of law, defendants did not challenge any findings of fact in their points of error, as Rule 28(b)(4) requires.

On June 8, 2010, the ICA filed its memorandum opinion. Marvin v. Pflueger, No. 28501, 2010 WL 2316274 (App. June 8, 2010) (mem.).  In the opinion, the ICA cited plaintiffs' Rule 28 argument without comment or analysis.  Id. at *17.  The ICA then noted that Rule 28(b)(4) also permits the appellate court to "notice a plain error not presented," and stated that it would review defendants' arguments for plain error.  Id.  The ICA then conducted a de novo Rule 19 analysis, concluding that Huddy-Yamamoto was a party to be joined if feasible, and that the trial court erred by not ordering her to be joined.  Id. at *27.  On June 30, 2010, the ICA filed its Judgment on Appeal.  On

7

September 28, 2010, plaintiffs filed a timely application for writ of certiorari.

## II.  STANDARDS OF REVIEW

### A.  Findings of Fact and Conclusions of Law

On appeal, a trial court's findings of fact are reviewed under the clearly erroneous standard.  Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citing Beneficial Hawai'i, Inc. v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.  A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding.  We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (quoting Beneficial Hawai'i, 96 Hawai'i at 305, 30 P.3d at 911 (2001) (internal citations, punctuation omitted)).  The court reviews conclusions of law de novo.  Id. (citing Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002)).

### B.  Rule 19 Joinder

The circuit court's decisions regarding indispensable parties under Rule 19 are reviewed for an abuse of discretion.  UFJ Bank Ltd. v. Ieda, 109 Hawai'i 137, 142, 123 P.3d 1232, 1237 (2005) (quoting Walsh v. Centeio, 692 F.2d 1239, 1243 (9th Cir. 1982) (holding that "the determination whether the action should

8

proceed without the absentee, and therefore, the determination of indispensability itself under [HRCP] Rule 19(b)['s federal counterpart], remains in the sound discretion of the trial judge.") (alterations in original)). "The [circuit] court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 30, 79 P.3d 119, 123 (2003) (alteration in original)).

## III. DISCUSSION

### A. The ICA Need Not Have Reviewed The Finding Of Prejudice As Plain Error Review Because Defendants Adequately Raised The Issue For Appeal

Plaintiffs assert that it was grave error for the ICA to review FOFs 102 and 104 because defendants did not challenge those findings in the points of error section of their amended opening brief before the ICA. Defendants respond, in part, that the ICA had authority to review the two findings of fact because they are redundant of COL 12, which the defense had properly challenged. We conclude that defendants are correct in this assertion, and that the defendants' substantial compliance with Hawaiʻi Rule of Appellate Procedure ("HRAP") Rule 28 obviated any need for the ICA to review the findings under plain error.

Rule 28 articulates formatting and content requirements for appellate briefs. The relevant portions of the rule state the following:

9

> (b) Opening Brief. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
>
> [. . .]
>
>> (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. <u>Where applicable, each point shall also include the following</u>:
>>
>>> [. . .]
>>>
>>> (C) <u>when the point involves a finding or conclusion of the court or agency, either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions</u>;
>>>
>>> [. . .]
>>>
>>> Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

HRAP Rule 28 (emphasis added). On appeal to the ICA, defendants articulated as error the trial court's "grant of summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order." Because the alleged error, the grant of summary judgment in the absence of non-parties, "involved a finding or conclusion," it thereby invoked the requirement found in Rule 28(b)(4)(C) that the party quote or reference the contested findings or conclusions.

"It is well settled that failure to comply with HRAP

Rule 28(b)(4) is alone sufficient to affirm the circuit court's judgment." Morgan v. Planning Dept., 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004) (citing Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001); Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 235, 948 P.2d 1055, 1076 (1997); O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994)). The appellate courts of this state require compliance with the Rules of Appellate Procedure, and have refused to review noncompliant arguments. E.g., Nuuanu Vally Ass'n v. City and Cnty. of Honolulu, 119 Hawai'i 90, 94 n.2, 194 P.3d 531, 535 n.2 (2008) (declining to review arguments raised in an intervenor's answering brief that omitted required sections); Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 263, 172 P.3d 983, 1007 (2007) (disregarding points of error presented in narrative with no elaboration of the errors and citing only the entire factual section of the trial court's decision and order); Doe v. Doe, 118 Hawai'i 293, 305, 188 P.3d 807, 819 (App. 2008) (declining to address a claim to which the party cites nothing in the record, and provides no specific or admissible evidence for support).

Nonetheless, noncompliance with Rule 28 does not always result in dismissal of the claims, and "[t]his court [...] has consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where

11

possible.'" Morgan, 104 Hawai'i at 180-81, 86 P.3d at 989-90 (quoting O'Connor, 77 Hawai'i at 386, 885 P.2d at 364). This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument. For example, the application from In re Estate of Damon did not comply with Rule 28 in that the six points of error did not include record citations to the petitioner's objections below, but only assigned error to the conclusions of the trial court. 119 Hawai'i 500, 503, 199 P.3d 89, 92 (2008). This court noted, however, that the petitioner had included the required citations for two of petitioner's points of error in another section of his brief. Id. The court reviewed these two points of error[7], concluding that "although the required citation is misplaced," the petitioner's application "sufficiently satisfies" the Rule 28 requirements. Id. at 504, 199 P.3d at 93. In addition to the petitioner's satisfaction of the Rule, the court offered two other justifications for considering the arguments on the merits: first, it furthered the court's policy of hearing cases on the merits where possible, and second, petitioner had raised the same argument before the trial court. Id. at 505, 199 P.3d at 94.

The ICA has articulated a similar rule. In Liki v. First Fire & Cas. Ins. of Hawaii, Inc., the appellees argued that

---

[7] The court vacated the trial court's judgment based on petitioner's first two points of error, and therefore did not consider the remaining points of error. Damon at 512 n.11, 199 P.3d at 101 n.11.

12

the ICA should disregard appellant's point of error because it did not comply with Rule 28(b)(3) and (4). 118 Hawaiʻi 123, 126 n.3, 185 P.3d 871, 874 n.3 (App. 2008). The ICA nonetheless reviewed the issue on the merits because the opening brief substantially complied with Rule 28(b)(4), and because the non-compliance with Rule 28(b)(3) was not material in the circumstances, and the appellant had cured the deficit in the reply brief. Id.

The defendants' amended opening brief in this case argued the following:

> The circuit court erred in granting the [plaintiffs'] motion for summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order. In its January 4, 2007 Findings of Fact and Conclusions of Law; Order ("Order"), the court stated:
>
>> 12. The Court finds the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit.
>
> Order, R. V.25 at 42. Defendants raised and argued this issue at R. V.16 at 46-52 and at the hearings in the testimony of Robert Bruce Graham, Jr. on August 9, 2006 and August 23, 2006, and Heidy Yamamoto-Huddy [sic] on September 15, 2006.

Then, in the argument section elaborating upon this point of error, defendants twice quote FOF 102[8], arguing that the finding is "absolutely contrary to the evidence." Though defendants do

---

[8] FOF 102 states: "There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is 'now improved, and easier access than before.'"

not directly cite FOF 104[9], they argue throughout that adjudication of the Marvins' rights affect Huddy-Yamamoto's rights, thus challenging the finding of no prejudice stated in FOF 104. The ICA reviewed the defendants' arguments for plain error, and concluded that "FOFs 102 and 104 are clearly erroneous, and the portion of COL 12 stating that Huddy-Yamamoto was not prejudiced by the proceeding is wrong." Marvin, mem. op. at *17, *27.

We conclude that defendants' amended opening brief "sufficiently satisfie[d]" the Rule 28 requirements, and therefore the ICA did not err in reviewing the finding that Huddy-Yamamoto had been prejudiced by the trial court's order. Damon, 119 Hawai'i at 504, 199 P.3d at 93. We arrive at this conclusion because FOFs 102 and 104 are redundant of COL 12, which defendants quoted in the points of error. Also, defendants challenged these findings in the analysis section of their amended opening brief. Furthermore, we note that defendants had raised the same argument at trial, albeit improperly.[10] Id. at

---

[9] FOF 104 states: "There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case."

[10] We note that the procedure defendants followed in raising the Rule 19 issue was improper. Defendants raised the issue of Huddy-Yamamoto's nonjoinder in a "position statement." As the trial court properly noted, "The purpose of a position statement is to summarize your respective positions, not to bring up new issues." Because there was no motion properly before the trial court, there was no formal, adversarial briefing of the issue, and plaintiffs had no opportunity to present written briefing in opposition to the joinder of Huddy-Yamamoto.

continue...

14

505, 199 P.3d at 94. Defendants' argument was conspicuous, and plaintiffs understood the issue on appeal sufficiently to provide the court with a thorough response on the merits. See Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (reviewing a brief that "does not specifically quote each FOF and COL to which [the Petitioner] takes exception, as required by [HRAP] 28(b)(4)(C)" "[i]n the interest of justice and fairness" because the court is "able to glean from [Petitioner's] brief in its entirety the specific FOF and/or COL he apparently challenges in this appeal."). Based on these facts, we hold that the ICA did not commit grave error in reviewing FOFs 102 and 104 in this case.

The dissent would interpret Rule 28 as requiring that anytime a trial court's FOF/COL contain any repetition, an opening brief must always quote each instance of the repeated

---

[10]...continue
Also, the timing of defendant's argument was troublesome. Defendants raised the issue on August 4, 2006. This was over four years after plaintiffs filed the initial complaint, over three years after plaintiffs added a cause of action for kuleana rights, and only five days before the evidentiary hearings on the plaintiffs' partial motion for summary judgment were scheduled to begin. Defendants had received plaintiffs' motion nearly two months prior, on June 6, 2006, and defendant's memorandum in opposition, filed June 19, 2006, made no mention of any defense under Rule 19.
Despite this procedural frailty, the trial court considered the issue, heard testimony regarding Huddy-Yamamoto's status as an indispensable party, and included relevant findings of fact and conclusions of law on the issue. In a subsection of their amended answering brief, plaintiffs mentioned the troublesome procedure, but they did not argue that the issue was not properly before the court and they cited no authority for such a challenge. Because neither party challenged the trial court's FOF/COL on the question of whether the defendants followed proper procedure in bringing the issue before the court, we deem the substantive issue raised at trial court for purposes of appellate review.

15

finding, otherwise the binding quality of any unquoted finding will negate the review of any properly-raised points of error. Dissent at 60. The facts of this case illustrate why we reject that holding. Before the ICA, defendants properly challenged COL 12, which stated in part that Huddy-Yamamoto was prejudiced by the proceeding. To hold that the ICA was bound by the unquoted FOFs 102 and 104, which found no facts supporting prejudice, means that the ICA could not meaningfully review the properly-challenged COL 12. We further reject that holding in recognition that the court "has consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" 104 Hawaiʻi at 180-81, 86 P.3d at 989-90 (2004) (quoting O'Connor, 77 Hawaiʻi at 386, 885 P.2d at 364 (1994)). The dissent does not cite, and we are unable to find, any case law in which Rule 28 was applied so strictly as to prevent the court from reviewing a properly-raised point of error on the logic that it is redundant of an unchallenged, and therefore binding, finding. We do not believe that Rule 28 mandates such technical application particularly where, as here, the findings were cited elsewhere in the brief, and where, as here, both parties recognized and committed substantial portions of their briefing to the contested issue.

We therefore hold that the ICA did not err in reviewing the defendants' arguments on the merits in this case. The point

of error challenging the trial court's conclusion regarding prejudice to Huddy-Yamamoto substantially complied with HRAP Rule 28, and it was not necessary for the ICA to review the point of error as plain error review.

**B.  The ICA Committed Grave Error When It Reversed The Circuit Court's Findings And Held That The Circuit Court Erred In Not Ordering Huddy-Yamamoto To Be Joined**

Hawaiʻi Rules of Civil Procedure ("HRCP") Rule 19, "Joinder of Persons Needed for Just Adjudication," governs bringing a non-party into a legal action.  Rule 19 works in conjunction with Rule 12, "Defenses and Objections-When and How Presented . . . ."  Pursuant to Rule 12(b)(7), a party may assert the defense of "failure to join a party under Rule 19" by motion. In this case, a motion was not before the trial court, see footnote 10 <u>supra</u>, but defendants raised the issue of Heidi Huddy-Yamamoto's absence in a position statement, and the court resolved the question.  The court found facts related to the issue of Huddy-Yamamoto as an indispensable party, and concluded as a matter of law that "the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit."

On appeal, defendants urged the ICA to review the trial court's determination regarding indispensability.  The ICA panel reviewed the trial court's findings and conclusions, determined that the trial court had erred, vacated the final judgment, and

17

remanded for new proceedings with Huddy-Yamamoto joined as a party. Marvin, mem. op. at *29.

In their application for writ of certiorari before this court, plaintiffs argue that the trial court did not abuse its discretion when it found that Huddy-Yamamoto was not an indispensable party, and thus, that it was error for the ICA to vacate the trial court's final judgment. As explained below, we agree with the plaintiffs, and therefore reverse the ICA on this point.

1.   <u>Defendants Failed To Timely Raise The Question Of Huddy-Yamamoto's Status As A Party To Be Joined If Feasible Under Rule 19(a)</u>

HRCP Rule 19, Joinder of Persons Needed for Just Adjudication, states:

> (a) Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.
>
> (b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the

18

> judgment, by the shaping of relief, or other measures, the
> prejudice can be lessened or avoided; third, whether a
> judgment rendered in the person's absence will be adequate;
> fourth, whether the plaintiff will have an adequate remedy
> if the action is dismissed for nonjoinder.

HRCP Rule 19.  The rule is divided into two sections, and as this court explained in UFJ Bank Ltd. v. Ieda, the analysis typically follows two steps.  109 Hawaiʻi 137, 142, 123 P.3d 1232, 1237 (2005) (citing Kescoli v. Babbitt, 101 F.3d 1304, 1309 (9th Cir. 1996) (applying HRCP Rule 19's federal counterpart, Federal Rules of Civil Procedure ("FRCP") Rule 19[11])).  First, the court must determine whether an absent party should be joined if feasible according to the factors listed in subsection (a).[12]  Id. at 142-43, 123 P.3d at 1237-38.  Second, if the party meets the requirements under subsection (a) but it is not feasible to join the party to the lawsuit, the court must proceed to Rule 19(b) to determine whether it may decide the case without the nonparty. Id. at 143, 123 P.3d at 1238 (citing Lau v. Bautista, 61 Haw.

---

[11]    Because HRCP Rules 12 and 19 are in all relevant aspects substantively identical to the federal rules, we may look to federal cases interpreting their rules for persuasive guidance.  See Pulawa v. GTE Hawaiian Tel, 112 Hawaiʻi 3, 20 n.15, 143 P.3d 1205, 1222 n.15 (2006) (citations omitted).

[12]    Former versions of both the Hawaiʻi and Federal Rule labeled parties satisfying the requirements of subsection (a) as "necessary."  In 1966, the Federal Rule was modified to identify those parties as "Persons to Be Joined if Feasible."  This change "eliminate[d] formalistic labels that restricted many courts from an examination of the practical factors of individual cases."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1601, at 6 (3d ed. 2001) (footnote omitted) (hereinafter "Wright, Miller & Kane").  The Hawaiʻi Rule was amended in 1972 to conform with the federal rule. Almeida v. Almeida, 4 Haw. App. 513, 516, 669 P.2d 174, 176 (1983).  Though this opinion uses the current terminology, we use the term "necessary party" when referencing prior cases that use the original term.

19

144, 154-55, 598 P.2d 161, 168 (1979)).  If the court must

dismiss the lawsuit rather than moving forward without the absent

party, the nonparty is labeled "indispensable."  Id.

HRCP Rule 19 works in tandem with HRCP Rule 12, which

governs the timing and procedure for asserting defenses.  The

relevant portions of Rule 12 state:

> (b) How presented. Every defense, in law or fact, to a claim
> for relief in any pleading, whether a claim, counterclaim,
> cross-claim, or third-party claim, shall be asserted in the
> responsive pleading thereto if one is required, except that
> the following defenses may at the option of the pleader be
> made by motion: (1) lack of jurisdiction over the subject
> matter, (2) lack of jurisdiction over the person, (3)
> improper venue, (4) insufficiency of process, (5)
> insufficiency of service of process, (6) failure to state a
> claim upon which relief can be granted, (7) failure to join
> a party under Rule 19. A motion making any of these defenses
> shall be made before pleading if a further pleading is
> permitted.  [. . .]
>
> [. . .]
>
> (g) Consolidation of defenses in motion. A party who makes a
> motion under this rule may join with it any other motions
> herein provided for and then available to the party. If a
> party makes a motion under this rule but omits therefrom any
> defense or objection then available to the party which this
> rule permits to be raised by motion, the party shall not
> thereafter make a motion based on the defense or objection
> so omitted, except a motion as provided in subdivision
> (h)(2) hereof on any of the grounds there stated.
>
> (h) Waiver or preservation of certain defenses. (1) A
> defense of lack of jurisdiction over the person, improper
> venue, insufficiency of process, or insufficiency of service
> of process is waived (A) if omitted from a motion in the
> circumstances described in subdivision (g) or (B) if it is
> neither made by motion under this rule nor included in a
> responsive pleading or an amendment thereof permitted by
> Rule 15(a) to be made as a matter of course. (2) A defense
> of failure to state a claim upon which relief can be
> granted, a defense of failure to join a party indispensable
> under Rule 19, and an objection of failure to state a legal
> defense to a claim may be made in any pleading permitted or
> ordered under Rule 7(a), or by motion for judgment on the
> pleadings, or at the trial on the merits. [. . .]

HRCP Rule 12.

As commentators have noted, "an inconsistency exists between the language of Rule 12(b)(7) and that of Rule 12(h)(2)." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1392, at 525 (3d ed. 2001) (hereinafter "Wright & Miller"). In light of this inconsistency, jurisdictions are split on how to enact Rule 12's provisions as they relate to Rule 19. There is little dispute regarding Rule 12's first mention of Rule 19. Under Rule 12(b)(7), a party may raise the defense of "failure to join a party under Rule 19" in its answer or by motion. This defense "shall be made before pleading if a further pleading is permitted", and, like most of the 12(b) defenses, it is waived if a party fails to timely raise it. HRCP Rules 12(b) and 12(h).

However, jurisdictions differ in their interpretation of Rule 12(h). Rule 12(h) protects against the waiver of some Rule 19 defenses. Rule 12(h)(2) states, ". . . a defense of failure to join a party <u>indispensable</u> under Rule 19 . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." HRCP Rule 12 (emphasis added). Some jurisdictions have ignored the word "indispensable" in Rule 12(h), thus reading the rule broadly to include a protection of defenses under Rules 19(a) and 19(b) against waiver. <u>Enter. Mgmt. Consultants, Inc. v. U.S.</u>, 883 F.2d 890 (10th Cir. 1989).

Other jurisdictions have interpreted 12(h) as saving only defenses involving indispensable parties under Rule 19(b) from waiver.  In Citibank v. Oxford Prop. & Finance Ltd., then-Circuit Judge Kennedy considered two related appeals brought in Guam by three parties: Citibank and Oxford, two creditors; and Lee, an individual who had borrowed funds from both Citibank and Oxford.  688 F.2d 1259, 1260 (9th Cir. 1982).  In one of several legal proceedings between the parties, Citibank succeeded in foreclosing on some of Lee's real property, and then commenced a second foreclosure action against Oxford and other junior lienholders in the property.  Id.  The trial court approved the foreclosure in favor of Citibank.  Id.  The parties appealed to a three-judge panel of the district court, which acted as the appellate court in Guam.  Id.  The district court reversed the trial court; one of the reasons for reversal was Citibank's failure to join Oxford in the original foreclosure action against Lee.  Id.  The Ninth Circuit panel, reviewing the district court's reversal, vacated the judgment.  Id. at 1261.  The Ninth Circuit noted that Oxford's absence need not have "decisive significance" requiring that the decision be vacated, and instead analyzed the prejudice suffered by Oxford due to its absence.[13] Id. at 1262.  Furthermore, as the Ninth Circuit explained, the

---

[13]    The court found that Oxford suffered no prejudice because the decision between Citibank and Lee would not bind Oxford in future actions. 688 F.2d at 1262.

22

issue was waived because "[i]n federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later."). Id. at 1262 n.4 (citing FRCP Rule 12(h) and Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110-11 (1968) (further citations omitted).

This reading of Rules 12 and 19 has been followed in several district courts in factual scenarios closely resembling the facts of today's case. For example, three years ago in Baykeeper v. Union Pacific Railroad Co., defendants Union Pacific Railroad Company and North Coast Railroad Authority sought to amend their answer to add an affirmative defense of failure to join all necessary and indispensable parties in an effort to join the State to the suit. No. C 06-02560 JSW, 2009 WL 1517868 at *1 (N.D. Cal. June 1, 2009). Plaintiffs argued that the motion should be denied because the State was necessary under Rule 19(a), not indispensable under Rule 19(b), and defendants' failure to assert their Rule 19(a) defense in their first responsive pleading resulted in waiver of that defense. Id. The District Court agreed with plaintiffs' argument, directly finding "Defendants have waived the issue of whether the State is a necessary party," and denying defendants' motion. 2009 WL 1517868 at *3.

The District Court for the District of Columbia reached the same conclusion regarding waiver in Ransom v. Babbitt, 69 F. Supp. 2d 141 (D.D.C. 1999). Ransom occurred in the context of Native American Tribal Law, but its application of the FRCP are relevant to our application of the HRCP. In that case, plaintiffs, three Chiefs of the Saint Regis Mohawk Tribe, sought recognition from the Bureau of Indian Affairs ("BIA"), following a referendum election. 69 F. Supp. 2d at 144. The BIA declined to recognize plaintiffs, and instead indicated its belief that the Tribe had adopted a Constitution and a separate Constitutional Government. Id. Plaintiffs filed an appeal with the Interior Board of Indian Appeals ("IBIA"), which summarily affirmed the BIA. Id. at 145. After a series of Tribal referenda, BIA filings, and IBIA appeals, all of which refused to recognize plaintiffs as the legitimate Saint Regis Mohawk government, plaintiffs filed suit in district court against the BIA and the IBIA. Id. at 146-47. On the day both parties filed their final round of briefs in the case, the BIA and IBIA filed a motion to amend their answer to include an affirmative defense of failure to join a necessary or indispensable party, the Constitutional Government. Id. at 147-48. The court determined that under Rule 12(h), the BIA and IBIA had waived their defense of failure to join a necessary party under Rule 19(a). Id. at 148. The court then analyzed the question of whether the

24

Constitutional Government was an indispensable party under Rule 19(b).  Id. at 148.

In another similar situation, the Southern District of Ohio agreed.  The plaintiff in North Dixie Theatre, Inc. v. McCullion filed suit seeking to invalidate certain state statutes governing flea market leases.  613 F. Supp. 1339, 1341 (S.D. Ohio 1985).  One of the defendants filed a Supplemental Motion for Summary Judgment seeking dismissal of the suit because the plaintiff had not joined various county and state officials with enforcement power over the statutes, whom he contended to be persons to be joined if feasible under Rule 19(a).  Id. at 1346. The District Court overruled defendant's motion, conceding that the parties were persons to be joined if feasible under Rule 19(a), but directly concluding that defendant had waived this defense by failing to raise it in his answer.  Id.  The court noted that, while Rule 12(h)(2) preserves the defense of an absent indispensable party under Rule 19(b), the defense under 19(a) is subject to waiver.  Id.  ("Although Rule 12(h)(2) preserves an indispensable party objection, this provision does not apply to persons who are merely necessary parties under Rule 19(a).") (emphasis in original).

These cases show the difficulty confronted by a trial court facing the absence of a non-party late in the course of trial.  On the one hand, it is desirable for all parties with

25

interest in the action to be before the court.  On the other hand, the rules indicate that, at some point, the case must proceed with the parties who are present, and the defense of failure to join additional parties has expired.  We are persuaded that the above-cited courts properly read Rules 12 and 19 together when they determined that only the defense of failure to join an indispensable party under Rule 19(b) is preserved from waiver by Rule 12(h)(2), and we adopt this reading in Hawaiʻi.[14]

---

[14]    The dissent maintains that these cases "only establish that when a defendant fails to raise the defense of an indispensable party in an answer, the defense that a party is necessary may be waived."  Dissent at 76 (emphasis in original).  This interpretation is unsupportable.  One of the main points made by these cases is the necessity of distinguishing between parties to be joined if feasible under 19(a) and indispensable parties under 19(b) because of their different treatment under Rule 12.  The dissent's reading is strained in that it overlooks that fundamental point of logic and commingles the two categories of parties.

Further, the dissent offers McCowen v. Jamieson, 724 F.2d 1421 (9th Cir. 1984), a case decided two years after Citibank.  Dissent at 73.  But ultimately, the fact that Ninth Circuit authority is split further proves our point that "an inconsistency exists."  Wright & Miller § 1392, at 525.  Indeed, McCowen itself highlights this inconsistency; in that very opinion, Circuit Judge Duniway dissented from the majority's interpretation of the Rules, explaining that, in his view, the Rules do not "require the trial court to open the door and go out and look for federal agencies or officials and invite them in."  Id. at 1425.  Furthermore, we note that McCowen is primarily cited for the holding that failure to join an indispensable party is not subject to waiver under Rule 12, a holding consistent with today's opinion.

Finally, the dissent also argues that today's opinion is "in inherent conflict" with HRCP Rule 21.  Dissent at 72.  HRCP Rule 21 states:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately by order of the court.

HRCP Rule 21.  This language is so broad that nearly any denial of joinder under Rule 19 could be cast as an "inherent conflict" with its language.  We decline to read the broad language of HRCP Rule 21 as a vehicle for circumventing the specific instructions set forth in HRCP Rules 12 and 19.  See Pan Am. World Airways, Inc. v. U.S. Dist. Court, 523 F.2d 1073, 1079 (9th Cir. 1975) ("By itself, [FRCP] Rule 21 cannot furnish standards for the

continue...

26

The facts of this case illustrate the wisdom of this approach. This reading encourages parties to raise issues as quickly as possible, giving notice to the other parties, and ensuring that all parties have an opportunity to investigate and respond to opposing parties' claims.  Further, because the remedy for an absent party to be joined if feasible under Rule 19(a) is typically the joinder of that party, encouraging parties to raise this objection early in litigation will allow the nonparty to be joined with minimal disruption to the litigation.  In this case, plaintiffs filed their complaint in 2003.  After three years of preparation, including discovery and consultation with expert witnesses, a date was set for trial.  Then, five days before the trial was to begin, defendants raised the affirmative defense that the case cannot continue without Huddy-Yamamoto.  On day three of the four-day trial, Huddy-Yamamoto testified that she wanted potable water and vehicular access; this was plaintiffs' first notice of these desires, as she had refused to participate in the case until that point.  Ordering Huddy-Yamamoto to be joined in the case in the middle of trial would have necessarily delayed proceedings because, as a party, Huddy-Yamamoto would have had a right to discovery, she may have needed to retain expert witnesses, and she may have wanted to raise third-party

[14]...continue
propriety of joinder, for it contains none.  Hence it must incorporate standards to be found elsewhere.").

27

claims against the Marvins or Pflueger.

A second concern addressed by this reading of Rule 12 is to remove the ability for a party to delay raising important issues in order to stall proceedings.  We believe giving effect to the word "indispensable" in Rule 12(h) properly furthers the goals of shepherding cases to final adjudication and encouraging parties to timely raise issues.  In this case, defendants did not raise the issue of Huddy-Yamamoto's nonjoinder in a motion before the court.  (See footnote 10, supra.)  Instead, in a position statement, defendants asserted the following: "Because the question of an easement, at the very least, requires the presence of the owners of the Huddy parcel, the action should be dismissed in its entirety or the disposition of the motion stayed pending the joinder of the Huddy parcel owners as necessary and indispensable parties."  Defendants made two arguments; though they do not articulate their request in the Rule 19 framework, it is evident from their requested remedies of dismissal and joinder that they were urging the court to find Huddy-Yamamoto to be either indispensable under 19(b) or a party to be joined if feasible under 19(a).

As the ICA noted, the trial court's FOF/COL did not provide an analysis of whether Huddy-Yamamoto was a party to be joined if feasible under Rule 19(a), but instead focused on whether Huddy-Yamamoto was an indispensable party under 19(b).

28

Marvin, mem. op. at *20. After noting this absence, the ICA then began a de novo analysis by considering whether Huddy-Yamamoto was a party to be joined if feasible under Rule 19(a). In doing so, the ICA erred because defendants had waived the 19(a) defense. We arrive at this conclusion for two reasons. First, defendants asserted in each of their answers that "Plaintiffs have failed to name indispensable parties to this action", thereby preserving only the affirmative defense under 19(b). Defendants' answers did not plead the affirmative defense that there existed parties to be joined if feasible under 19(a). Because they did not raise the issue in a pre-answer motion or in a responsive pleading, defendants therefore waived the 19(a) defense pursuant to Rule 12.

Additionally, Rule 12(g) provides further support for waiver. The rule states:

> (g) Consolidation of defenses in motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Rule 12(g). About two weeks prior to their position statement, on July 19, 2006, defendants filed a motion to dismiss for failure to join an indispensable party. Because the Rule 19(a) argument was "then available to" defendants, and because it is not exempted under Rule 12(h), defendants were foreclosed from

29

raising the Rule 19(a) defense in a subsequent motion.

As explained above, we conclude that the defendants' inaction in raising the question of Huddy-Yamamoto's status as a party to be joined if feasible under Rule 19(a) resulted in their waiver of that defense. In contrast, the question of Huddy-Yamamoto's indispensability was properly before the trial court because defendants had preserved the defense by pleading it in their answer, and because it was timely pursuant to Rule 12(h)(2). The remainder of this opinion reviews the trial court's and ICA's resolution of the issue of indispensability.

2. The Applicable Standard Of Review For An Appellate Court Considering A Trial Court's Determination Of Indispensability Is Abuse Of Discretion

In Haiku Plantations Ass'n v. Lono, this court noted that the "[a]bsence of indispensable parties can be raised at any time even by a reviewing court on its own motion." 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (citation omitted). In cases where the appellate court raises the issue itself for the first time on appeal, it follows that the appellate court must perform a de novo Rule 19 analysis, there being no analysis from the trial court to review. In contrast, in cases where the trial court has made a determination as to a party's indispensability, appellate courts must review the trial court's decision for an abuse of discretion. UFJ Bank Ltd. v. Ieda, 109 Hawaiʻi 137, 142, 123 P.3d 1232, 1237 (2005) (quoting Walsh v. Centeio, 692 F.2d 1239,

30

1243 (9th Cir. 1982)).  As explained below, the ICA erred in the case at hand when it reviewed the trial court's determination that Huddy-Yamamoto was not an indispensable party without properly deferring to the trial court's findings.

The abuse of discretion standard is particularly appropriate in this case because analysis under Rule 19 requires the trial court to consider the facts and circumstances of the particular case before it.  In describing the Federal Rule, Wright, Miller, and Kane note that "[p]ragmatic considerations are controlling; however, the list of factors now found in the rule is not intended to be exclusive."  Wright, Miller & Kane, § 1601, at 16-17 (internal footnotes omitted).  Appellate courts of our jurisdiction, in applying this rule, have stressed the discretionary nature of the analysis.  As the Intermediate Court of Appeals described the analysis under Rule 19(b), the four factors

> are in no way exclusive. Moreover, the rule does not state the weight each factor should be given. Rather, a court should consider all of the factors and employ a functional balancing approach. Because of the flexibility of the "equity and good conscience" test and the general nature of the factors listed in HRPP [sic] Rule 19(b), whether a particular non-party described in Rule 19(a) will be regarded as indispensable depends to a considerable degree on the circumstances of each case.

Int'l Sav. & Loan Ass'n v. Carbonel, 93 Hawai'i 464, 470, 5 P.3d 454, 460 (App. 2000) (quoting GGS Co. v. Masuda, 82 Hawai'i 96, 105, 919 P.2d 1008, 1017 (App. 1996)).  Given the discretionary nature of the inquiry, it is critical that appellate courts

31

vacate the trial court's conclusion regarding indispensability only upon finding an abuse of discretion.

In <u>Kealoha v. Cnty. of Hawaii</u>, this court explained the abuse of discretion standard as follows:

> the trial court may not be reversed by an appellate court unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. Under that standard different trial judges may, on the same facts, arrive at opposite rulings without any of them being reversible on appeal.

74 Haw. 308, 318, 844 P.2d 670, 675 (1993) (quoting <u>State v. Rabe</u>, 5 Haw. App. 251, 260-61, 687 P.2d 554, 561 (1984)).  Under an abuse of discretion standard, it is understood that reasonable judges may disagree, but the task of an appellate court is to defer to the judgment call of the trial court judge unless that judge "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  <u>UFJ Bank Ltd. v. Ieda</u>, 109 Hawaiʻi 137, 142, 123 P.3d 1232, 1237 (2005) (quoting <u>Ranger Ins. Co. v. Hinshaw</u>, 103 Hawaiʻi 26, 30, 79 P.3d 119, 123 (2003)).  In their response brief, defendants seek to defend the ICA's decision to vacate the trial court's judgment by quoting large swaths of the ICA opinion and by highlighting the logic of their <u>de</u> <u>novo</u> review.  This argument answers the wrong question because in reviewing these discretionary decisions in which reasonable judges may disagree, the analysis must focus on whether the trial court abused its discretion, not whether the ICA judges provided cogent analysis.  The remaining portion of

our opinion today applies the abuse of discretion standard to the trial court's determination that Huddy-Yamamoto was not indispensable.

3.    The Trial Court Did Not Abuse Its Discretion In Finding That Huddy-Yamamoto Is Not An Indispensable Party

Before we can evaluate the trial court's finding that Huddy-Yamamoto was not an indispensable party, we must first articulate exactly what the trial court decided.  The court's order in this case stated:

> 1.  The Court, therefore, hereby grants Plaintiffs' Motion for Partial Summary Judgment Re: Easement By Necessity and/or Order Issuing Preliminary Injunction and enters an Order Enjoining and Restraining the Defendants from interfering with, blocking or otherwise making Plaintiffs' access unreasonable or unsafe.
>
> 2.  The Court, therefore, hereby grants Plaintiffs' Motion for Temporary Restraining Order and enters an Order Enjoining and Restraining the Defendants from interfering with, dismantling, damaging and/or destroying Plaintiffs' water system that brings water from the western stream and spring to their kuleana.
>
> 3.  The Plaintiffs shall present to Defendant Pila'a 400 LLC, and Defendant shall execute, a recordable Non Exclusive Grant of Easement in favor of Plaintiffs, as set forth above.

This order effected the following: (a) it established plaintiffs' entitlement to an easement over defendant Pila'a 400 LLC's property; (b) it enjoined defendants from interfering with plaintiffs' access; (c) it enjoined defendants from interfering with plaintiffs' water system; (d) it required defendant Pila'a 400 LLC to execute a recordable Non Exclusive easement.

The injunctions serve the purpose of restraining

33

defendants from actions which impair the plaintiffs' access to their property or endanger their water system.  There is no evidence that Huddy-Yamamoto has any involvement in these provisions of the order.  Instead, the trial court's relevant findings of fact on the matter show a pattern of defendants' conduct towards plaintiffs in which Huddy-Yamamoto was not involved.  For example, the trial court found:

> 118.  [Nick Marvin] testified, "We changed roads because Mr. Pflueger is the big land owner and if we go against him, he'll make our life miserable.  He's made our life miserable many times."
>
> [. . .]
>
> 154.  Testimony from Plaintiffs and their witnesses established intentional blocking of access by the Defendants.
>
> [. . .]
>
> 157.  Defendant James Pflueger has caused the access road at Pilaʻa to be blocked without notice since the lawsuit was filed in this case, including fencing off the access, blocking the access with machinery, blocking the access with trucks, tractors, porta potties, cows and bulls, and interfering with access by running sprinklers on the Marvin children's pedestrian access and placing water troughs and piles of chicken manure next to the access.
>
> 158.  After this Court entered an Order preventing Defendants from blocking Plaintiffs' access without providing 24 hours advance notice, Defendant James Pflueger, on Admissions Day, blocked the Marvin's lower access road by parking his truck next to their property line, and turning off the ignition.  Even when he backed up the road to the parking plateau, he again blocked the Marvin's access by stopping his vehicle and preventing Richard Marvin from driving through.

The circumstances surrounding the injunction show that Huddy-Yamamoto was not involved in the conduct necessitating the injunction, nor would she be affected by the court's injunction of this conduct.

The court's order also establishes that the plaintiffs have a right to access to their property.  As Conclusion of Law 3 summarizes:

> 3. As owners of a kuleana at Pilaʻa, Kauaʻi, Hawaiʻi, that is landlocked and traceable to the Great Mahele, Plaintiffs Richard Marvin III, Nicholas Marvin, and Barbara C. Nelson are entitled to an easement by necessity, and reasonable use of water for drinking, domestic and agricultural purposes.

This COL could only affect Huddy-Yamamoto if the existence of the plaintiffs' access would somehow negate Huddy-Yamamoto's right to access.  However, as the trial court found, this is not the case. The Haena Kuleana was partitioned in 1965, and, as explained in the FOF:

> 56. The partition action in 1965 did not separate or alienate the statutory rights of the kuleana to access or water.
>
> 57. Neither the partition action or [sic] the deeds passed down through the generations pertaining to ownership interests in the kuleana have abrogated or abolished the statutory entitlement of the kuleana owners to access and water.
>
> [. . .]
>
> 60. The partition action did not affect the rights of the kuleana to access.  The Marvin and Huddy kuleana are entitled to access through the Pilaʻa 400 LLC parcel. Indeed, all kuleana have access.

Thus, the court's recognition that the plaintiffs have a statutorily protected right of access to their property is a legal conclusion that does not affect Huddy-Yamamoto because the right of access exists for all the residents of the kuleana, the partition action notwithstanding.

Finally, the trial court set the route of the access.

35

Defendants argue that Huddy-Yamamoto was an indispensable party to this determination. While there is no case directly considering access rights to a partitioned kuleana, in an early case discussing kuleana access rights, <u>Henry v. Ahlo</u>, the Supreme Court for the Republic of Hawaiʻi determined that the plaintiff in that case, a kuleana owner, "could not have a number of roads; he is only entitled to one. . . ." 9 Haw. 490, 490 (Haw. Rep. 1894). It follows that if a partitioned kuleana is only allowed one access point, then the owners of property within that kuleana may be affected by the determination of where that access point should be placed. Even so, the fact that a nonparty may be affected by a proceeding is not sufficient to make them an indispensable party. <u>Provident Tradesmens Bank & Trust Co. v. Patterson</u>, 390 U.S. 102, 110 (1968). (Recognizing that a court may enter a judgment "that, in practice, affects a nonparty.") Instead, the inquiry established by Rule 19(b) is more comprehensive. A court should consider the following four factors in determining whether a party is indispensable, and therefore whether the case must be dismissed:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

HRCP Rule 19(b). The factors articulated in the Rule are "in no

36

way exclusive," and the court should consider the circumstances of each individual case. Int'l Sav. & Loan Ass'n v. Carbonel, 93 Hawaiʻi at 470, 5 P.3d at 460 (citation omitted). Upon reviewing the named factors above, as well as equitable factors the trial court considered in its analysis, we hold that the trial court did not abuse its discretion when it found that Huddy-Yamamoto was not an indispensable party in this case.

### a. Factor One: Prejudice to Huddy-Yamamoto; Prejudice to the Parties

The trial court found that Huddy-Yamamoto was not prejudiced by the order in this case. As stated in the FOFs:

> 102. There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is "now improved, and easier access than before."
>
> [. . .]
>
> 104. There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.

The trial court did not abuse its discretion in so finding for several reasons. First, because Huddy-Yamamoto is not a party to the lawsuit, she is not bound by the trial court's decision. Huddy-Yamamoto testified that the access to her property is better than it was before; however, if she decides she would like to pursue litigation in the future to gain even better access than she currently enjoys, the trial court's order in this case will not preclude her from doing so. The dissent states that

37

"Pflueger or his successor can deny [Huddy-Yamamoto] access at any time." Dissent at 23. This is not accurate. Respectfully, in claiming that Pflueger may deny Huddy-Yamamoto access, it seems the dissent is conflating legally-enforceable rights with judicially-determined rights. Huddy-Yamamoto has the same right to access her property that she had before this lawsuit. The fact that she has not pursued litigation, as the Marvins have, to acquire judicial declaration of her rights does not negate her ability to enforce them. If defendants or any potential successors to the servient estate were to interfere with Huddy-Yamamoto's access rights, the judgment in this case would not prevent Huddy-Yamamoto from pursuing legal action to assert her rights. In fact, the dissent admits as much when it writes, in a subsequent section of analysis, that "Huddy-Yamamoto may seek to have a legal right of way established by asserting rights to an easement as part owner of the kuleana. She may seek to have the easement changed or located elsewhere, in a more convenient and accessible location." Dissent at 27.

Second, in considering the potential for prejudice, it is not an abuse of discretion for the trial court to consider Huddy-Yamamoto's refusal to participate in the litigation. The court found:

> 90. Ms. Huddy testified that she was asked by Plaintiffs' attorney to participate in the instant lawsuit against Defendants, but she refused.

38

[. . .]

100. Access to their kuleana was never in contention between [plaintiffs] and William Huddy because the Huddy family always had a trail to their house.

101. Neither Elizabeth Huddy or Heidi [Huddy-Yamamoto] reside at the Pila'a kuleana.

102. There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is "now improved, and easier access than before."

[. . .]

104. There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.

105. The Huddy family enjoys access and water to their kuleana and specifically refused to participate in this case.

The dissent notes that these findings of fact regarding Huddy-Yamamoto's refusal to join the lawsuit do not specifically state "whether Huddy-Yamamoto knew that the proceeding involved kuleana claims when she purportedly refused to participate." Dissent at 9 n.8. However, there is nothing in the record to support a finding that plaintiffs limited their invitation to the property damage claims. First, the earliest complaint filed in this case seeks "[a] preliminary and permanent injunction preventing Defendant Pflueger from blocking Plaintiffs' access road to and from their properties at Pila'a Beach. . ." The plaintiffs' access to their property has always been at issue in this case. Second, on the third day of trial, when plaintiffs' counsel asked about her refusal, Huddy-Yamamoto testified as follows:

Q. You remember having a conversation with me, do you not,

39

> before the filing of the lawsuit?
> A. Yes.
> Q. And I asked you if you wanted to participate in this
> case?
> A. Yes.
> Q. And at that time you did not, did you?
> A. Did not.
> Q. And you did say that you would work things out directly
> with Mr. Pflueger, didn't you?
> A. Yes.
> Q. And have you worked things out with Mr. Pflueger?
> A. Regarding the access?
> Q. Yes.
> A. This is not up to Mr. Pflueger. It's up to the County or
> powers to be.

Huddy-Yamamoto proceeded to testify that instead of joining the

lawsuit, she talked to the County and to the Pflueger's attorney

expert witness to work on access to her property.  This testimony

supports the finding that Huddy-Yamamoto knew the lawsuit was

about access because approaching the County would not be an

alternative to a lawsuit seeking recovery for property damage, as

it was for access.  But even assuming, arguendo, that plaintiffs'

counsel only asked Huddy-Yamamoto to join the property damage

claims, it is undisputed that Huddy-Yamamoto had an attorney at

the time of trial and understood that the purpose of the lawsuit

at the time of the hearing was to establish access to the

properties at Pilaʻa Beach.  Even so, she did not file a motion

to intervene in the lawsuit.  It was not an abuse of discretion

for the trial court to consider the fact that Huddy-Yamamoto

actively refused to join the lawsuit to protect her interests

when weighing the prejudice factor of Rule 19(b).

　　　　The dissent points to the plaintiffs' invitation for

Huddy-Yamamoto to join their lawsuit as an indication that Huddy-Yamamoto is an indispensable party. Dissent at 45-46, 54. However, the invitation to join another party, or even the belief that a nonparty "should be made a party" is not sufficient to establish that the invited party is indispensable to the case. Dissent at 45. The plaintiffs in this case are a group of neighbors who live on kuleana throughout the defendant's ahupuaʻa on Kauai; plaintiffs' counsel represents many individuals on numerous claims, and the fact that Huddy-Yamamoto was invited to join the lawsuit does not establish that the court cannot adjudicate the existing plaintiffs' access rights in her absence.

A trial court engaging a Rule 19(b) analysis must also consider prejudice to the existing parties. Defendants claim that they are prejudiced by the trial court's decision because they may be subjected to multiple lawsuits. In weighing the potential prejudice to the parties, trial courts may consider equitable principles, such as defendants' delay in raising their defense. As the Committee Note to the 1966 amendment of the federal Rule 19 states, when a party raises joinder to protect himself against future lawsuits that the nonparty may file against him, "his undue delay in making the motion can properly be counted against him as a reason for denying the motion." Advisory Committee Notes to 1966 Amendments of Fed. R. Civ. Pro. 19.

41

Hawaiʻi courts have applied similar logic. In Almeida v. Almeida, a mother who held property as a joint tenant with her son, George, sought to divest him of his interest because he was not providing care for her as he had promised. 4 Haw. App. 513, 514-15, 669 P.2d 174, 177 (1983). On the morning of trial, and nearly a year after the action had been filed, George filed a motion to dismiss, alleging that his brother Henry was an indispensable party. Id. at 515, 669 P.2d at 177. George argued that Henry was, along with their mother, the grantor who signed the deed over to George; if that grant is now invalid due to George's nonperformance, then Henry may still have a part interest in the property. Id. The trial court denied George's motion to dismiss, and the Intermediate Court of Appeals affirmed, writing that it was "fatal for George to have waited to file his motion until the day of trial when Mrs. Almeida was in court ready to proceed." Id. at 517, 669 P.2d at 178. However, defendants here waited until four years after the complaint was filed, and until only five days before the trial was to begin to raise the issue of Huddy-Yamamoto's nonjoinder, and then they did not even file a proper 12(b)(7) motion to dismiss for lack of joinder.

The dissent distinguishes Almeida based on the motives of the parties. Dissent at 50-51. While George Almeida sought to protect his interest in the property, the dissent argues that

defendants today seek to protect Huddy-Yamamoto's interest. Dissent at 51. We disagree with the dissent's narrow reading of Almeida, and with its characterization of the facts of today's case. First, though the ICA's analysis in Almeida is brief, the ICA lists several factors considered in their analysis. We see no reason to read Almeida as purely a case about the moving party's motive because the ICA considered the fact that Mrs. Almeida was in the courtroom and ready to proceed, as well as the likelihood that the court's decision would be binding on him. Furthermore, the one case cited by the ICA for support, Nat'l Board of YWCA v. YWCA of Charleston, S.C., 335 F. Supp. 615 (D.S.C. 1971), does not mention the moving party's motive once, but rather focuses its analysis on the timing of the motion and the prejudice to other parties. 335 F. Supp. at 627 (noting that the delay in the motion until the morning of trial warrants its denial due to laches, unnecessary delay, and the expense that granting the motion would have caused for the other parties who were ready to proceed). See also Ishida v. Naumu, 34 Haw. 363, 372 (Haw. Terr. 1937) ("A court of equity ... has always refused its aid to stale demands where the party has slept upon his rights or acquiesced for a great length of time.")

We also disagree with the dissent's characterization of defendants' motives in this case. The first argument defendants provide in their position statement maintains that nonjoinder

43

could effect "an unreasonable burden on [their] servient property," and "leave Defendants and the servient parcel subject to subsequent litigation over the same issue, and to inconsistent or conflicting decisions. . ." Furthermore, due to Huddy-Yamamoto's knowledge of and participation in the trial, defendants' role as protector of the nonparty's interest is diminished.

Expecting parties to timely raise claims serves two important functions: first, it gives the trial court greater opportunity to consider claims and to submit them to the opposing party for briefing. Second, it discourages "sandbagging," the practice of saving issues to stall proceedings at the trial level or to raise them on appeal only if they lose at trial.[15] See State v. Miller, 122 Hawaiʻi 92, 135, 223 P.3d 157, 200 (2010) (Nakayama, J., dissenting) (citing Wainwright v. Sykes, 433 U.S. 72, 89 (1977); United States v. Vonn, 535 U.S. 55, 72 (2002)). The long delay in raising the issue at trial weighs against requiring dismissal of the proceedings in this case.

It is incorrect to state, as the dissent does, that "Pflueger's delay, if any, in raising the issue was never a factor in this case." Dissent at 51. The court described the

_____

[15] While indispensability was not raised for the first time on appeal in this case, we recognize that other jurisdictions facing that scenario have articulated rules meant to address similar concerns. See e.g. Judwin Prop., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 434-35 (5th Cir. 1992) ("This Court will not endorse an effort by plaintiffs to lay behind the log and raise the issue of indispensable parties following an adverse ruling.")

44

timing of Pflueger's motion as the "fundamental problem," and the court's "fundamental concern." Further, the court admonished the defendants that "[t]he purpose of the position statement is to summarize your respective positions, and I use the word 'summarize' strongly, as well as list your witnesses and your proposed exhibits. Not to bring up new issues." In answer to an objection from plaintiffs' counsel regarding defendants' delay, the court assured the parties that "whatever was properly pled will be heard this morning. The Court does note that, I believe in the defendants' position statement, there were issues that were raised for the first time and the Court takes notice of that." The foregoing analysis supports the trial court's determination that Huddy-Yamamoto was not an indispensable party, and does not indicate an abuse of discretion.

b.    Factor Two: Lessening or Avoiding Prejudice

As to the second factor of the Rule 19(b) analysis, whether prejudice can be lessened or avoided in the shaping of the relief, we note that the easement granted by the trial court is non-exclusive[16] and preserves the status quo. As the court

---

[16]    The dissent argues that the fact that the easement is non-exclusive does not factor in to analysis of prejudice suffered by Huddy-Yamamoto because a non-exclusive easement, by definition, merely permits the servient landowner use of the easement. Dissent at 41-42 n.36. However, the type of easement is relevant because if there existed any evidence that the court's order were exclusive to the Marvins (and thus to Huddy-Yamamoto's detriment), this would be an indication of prejudice to Huddy-Yamamoto. This is not the case. Instead, the record shows that several groups of people use this road, including "fishermen, hula halau, beachgoers, campers, Defendant
continue...

found:

62.  The specifics of the location, the width, the nature of the use of the access are for the Court to decide.

63.  The actual access that the parties have been using is evidence of where it might be placed and where a commissioner of ways, or judge in equity might reasonably choose to put it.  Where the access has been historically is one of the ways of determining where it ought to be.

[. . .]

106.  Testimony from witnesses established a traditional access route to the Marvin kuleana from the middle gate at Koolau Road through Defendant Pilaʻa 400 LLC's parcel and to the bluff above Pilaʻa beach.  This road was also the main access road used by Kilauea Sugar Plantation over 30 years ago.

[. . .]

108.  According to the testimony of Mrs. Sproat, the traditional road extended part way down the bluff to a plateau with ironwood trees.  This is where they parked their cars.  From the plateau, there were three trails down to the beach-one on the Hanalei side, one over the tip of the hill and straight out to the ocean, and another trail on the Kapaa side.  There was never a road to the Huddy house.

[. . .]

114.  Nicholas Marvin has lived at Pilaʻa permanently since 1978.  He also testified about the access roads to the kuleana.  When he first moved to Pilaʻa, he drove down the center, or traditional, road, [sic] to the pali.  The traditional road is a straight, flat dirt road that is "passable at all times until you get to the steep part of the road, just right on the cliff, where it starts down the cliff."

115.  Nicholas Marvin testified that the road from the pali to their kuleana was there when his family bought the property in 1965.  He and his brother Richard Marvin maintained the road, but never widened it.  They used cane knives and chain saws to cut back the hau, to this day.  They continue to maintain the road from the pali to their kuleana.

116. He also testified, "The Huddy's [sic] parked about half

---

[16]...continue
Pflueger and his employees."  Ms. Marvin testified that "It's the most well-traveled road on the property."  The easement does not preclude Huddy-Yamamoto or any of these other groups of people from using the road, as an exclusive easement would; this is certainly relevant to the analysis of prejudice.

way down the pali.  There is a little plateau where people would park." "There was a walking trail to the Huddy's further to the east.  There were two, maybe three trails." "There was a trail where the Huddy's [sic] and the fishermen would park.  The trail went directly to the Huddy's and off to the east that the fishermen used so they wouldn't impact the Huddy's [sic].

[. . .]

120.  Plaintiff Amy Marvin is married to Richard Marvin. She first visited Pilaʻa in 1975.  She took the same route they are using today.  In 1975, she drove all the way down to the Marvin kuleana in a two wheel vehicle.  When it rained, you needed a four wheel drive to make it up or down the pali road.

[. . .]

123.  Plaintiffs' Exhibit P1, received in evidence, is a map that depicts three roads from Koolau Road through Defendant Pilaʻa 400 LLC's parcel, to the pali above the Marvin and Huddy kuleana, that have been used over the years.

[. . .]

125.  The "lower road," depicted by the number #3 in Exhibit P1, did not exist until the year 2000 when James Pflueger "eliminated the traditional road and told us to onto [sic] the road marked #3."

[. . .]

127.  Route #3 traversed along the eastern boundary of Pilaʻa 400 LLC's parcel, and through a stream bed referred to as Gulch 2 until reaching the bottom of the gulch where it then proceeded towards the west, behind the Huddy house and stopped at the Marvin parcel.

128.  Route #3 was in use from 2000 until 2002 when it was condemned by the County following the mudslide of November 26, 2001.

129.  The testimony of Heidi Huddy that her family used Route #3 in the 1970's and 1990's is mistaken as Route #3 did not exist until the year 2000.

130.  Plaintiffs' traditional access road (Route #2) was restored in 2002 because Route #3 was condemned by the County of Kauaʻi and the Department of Health ordered that Mr. Pflueger restore the Marvin's traditional access to their home.

[. . .]

133.  Traditionally, Route #2 identified in Exhibit P1, beginning at the Koolau gate to the bluff above Pilaʻa beach, has been used by fishermen, hula halau, beachgoers,

campers, Defendant Pflueger and his employees, among others. As these findings show, the trial court considered historical access routes and found the traditional access road to be an appropriate route for the easement. This access road leads directly to the parking area by the staircase that goes to the Huddy property, and as Huddy-Yamamoto testified, this access is "improved" and "easier" than it had ever been. The fact that the easement maintains the status quo and does not prevent any resident from accessing the property as they have been accessing it is certainly a factor the court may consider in determining whether it may, "in equity and good conscience" proceed without all the residents of the kuleana present.

Additionally, any prejudice of the decision is lessened because, as noted by the trial court, the access route is not permanent and may be changed in the future. The court found:

> 64. The access can be moved at the need of either party as long as that need is not unreasonably burdensome or unfair to the other party. The court is to decide what is reasonable under the circumstances.
>
> [. . .]
>
> 137. Defendants' witness, Bruce Graham, testified that a kuleana access road "can be moved at the need of either party as long as that need is not unreasonably burdensome or unfair to the other party."
>
> 138. Although Defendants wish to re-route Plaintiffs' currently used access road, Defendants have failed to demonstrate a need for the re-routing of the access road at the present time.

48

The trial court's order in this case does not strip the parties or Huddy-Yamamoto of the ability to change the access to their kuleana in the future, should access needs change.

c.    Factor Three: Adequacy of Judgment

The lawsuit sought determination of access rights for the plaintiffs over the defendants' servient estate.  The court was able to adequately resolve this question for the plaintiffs in Huddy-Yamamoto's absence.  Thus, the adequacy of judgment factor weighs against finding Huddy-Yamamoto to be indispensable, and it weighs in favor of resolving the lawsuit in her absence.

d.    Factor Four: Adequate Remedy if Dismissal Permitted

The trial court found many facts that go to the importance of the lawsuit to the plaintiffs, as well as the delays the plaintiffs had already experienced in determining their access routes.  The court found:

> 65.  Without vehicular access to their kuleana at Pila's [sic] the Marvin Plaintiffs cannot live in their home.
>
> [. . .]
>
> 91.  Without water from the western stream and spring, the Marvin Plaintiffs will be deprived of their only source of water and cannot live in their home at Pila'a.
>
> [. . .]
>
> 141.  The Court takes judicial notice of the Defendants' Motion To Establish Temporary Access [sic] Roadway Access in 2003, and the Order Granting In Part and Denying in Part Defendants' motion.  The Order, filed on July 18, 2003, allowed Plaintiffs to "have the right to continue to use the vehicular way that Plaintiffs are presently using."
>
> [. . .]

49

> 143. The 2003 Order further provided that "Defendants are to inform the Court if the eastern access road can be made passable for two wheel drive vehicles and if so, when. But until such time as the Court determines that any other alternative route will be sufficient, the Plaintiffs shall continue using the pathway or vehicular way that they are presently using."
>
> 144. Defendants failed to propose an alternate route and, after nearly three years, Plaintiffs filed their Motion for Partial Summary Judgment re: Easement by Necessity and/or Order Issuing Preliminary Injunction.

These facts, the fact that plaintiffs had waited years to determine their access rights, and the fact that plaintiffs actually reside on their property and rely on being able to access their property to live their daily lives all weigh against dismissal. "[E]ven if the defendant raises the issue of failure to join a party in a fashion that is timely under the letter of the rule governing defensive responses, the court can deny the motion if, in 'equity and good conscience,' defendant's undue delay will cause harm to the plaintiff." Moore's Federal Practice § 19.02[4][b].

Thus, as shown by our review of the four factors of Rule 19(b) analysis, the trial court did not abuse its discretion in finding that Huddy-Yamamoto was not indispensable to the action.

Finally, we note the policy considerations supported by the holding in this case. First, participating in a lawsuit is an expensive, sometimes cost-prohibitive, undertaking. When one owner of a partitioned kuleana, after experiencing years of

difficulties in accessing his home, seeks a judicial determination of his right to access, it does not follow that everyone with an interest in the kuleana must retain counsel and join the lawsuit under these circumstances.  Where, as here, the prejudice to nonparties can be eliminated or limited, Rule 19 does not automatically mandate dismissal of the plaintiffs' case if the owners of other partitions are absent.  We understand the benefits of having all desirable parties before the court in every case.  However, we also know that, as a practical matter, this is not always possible and, at some point, cases must come to trial.

The dissent argues that the "relevant 'policy' inherent in HRCP Rule 19 is to effect the public's interest 'in avoiding repeated lawsuits on the same essential subject matter.'" Dissent at 55.  While this is certainly one relevant interest, if avoiding multiple litigation were the singular aim of Rule 19, the rule would simply require joinder of every party with an interest when raised at any time, and it would forbid courts from entering judgments in the absence of any affected party.  In reality, Rule 19 reflects the complicated landscape of litigation, where the rules of procedure seek to balance multiple interests and policies.  As Justice Brennan explained, "[u]nder the Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent

51

with fairness to the parties . . ."  <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 724 (1966) (emphasis added).  The rules of civil procedure foster consideration of the facts and circumstances of individual cases.  HRCP Rule 19 gives the trial court discretion to determine, "in equity and good conscience," whether a case must be dismissed for lack of an indispensable party.  Where, as here, there is no abuse of that discretion, the appellate courts must not reverse the trial court's decision.

### IV.  CONCLUSION

Based upon the foregoing analysis, the judgment of the Intermediate Court of Appeals is reversed, and the trial court's decision is hereby affirmed.

Peter Van Name Esser
(Teresa Tico with him on the
application) for petitioners/
plaintiffs-appellees

David J. Minkin of McCorriston
Miller Mukai MacKinnon LLP
(William C. McCorriston and
Becky T. Chestnut with him
on the response) and
Wesley H. H. Ching of Fukunaga
Matayoshi Hershey Ching & Kop
LLP for respondents/
defendants-appellants

/s/ Paula A. Nakayama

/s/ James E. Duffy, Jr.

/s/ Michael D. Wilson

/s/ Patrick W. Border

